IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **CHARLES SCHWAB & CO., INC.** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | CIVIL ACTION NO: _____ |
| : | |
| **DARREN POMEROY** : | |
| : | |
| **Defendant.** : | |
| : | |

## VERIFIED COMPLAINT

Plaintiff Charles Schwab & Co., Inc. ("Schwab") hereby submits this Complaint against Defendant Darren Pomeroy seeking a preliminary injunction to preserve the status quo pending arbitration of its claims.

On October 21, 2014, when Schwab Financial Consultant Darren Pomeroy ("Pomeroy") notified his manger that he intended to resign from his employment at Schwab, he did not disclose that he had come into the office shortly after 6:00 AM that morning to gather extensive, proprietary customer information.  Nor did he disclose that he intended to contact Schwab clients in violation of his Confidentiality, Non-Solicitation and Intellectual Property Agreement.  Schwab has been unable to determine a legitimate business reason for Pomeroy's early morning, rapid fire access of its proprietary client information, but Pomeroy's actions pose a serious risk to sensitive, non-public client information.  New Mexico law entitles Schwab to a preliminary injunction directing Pomeroy to cease his unlawful solicitation of Schwab's clients and to return Schwab's proprietary client information.

## I. THE PARTIES

1.   Schwab is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Francisco, California.  It is authorized to

conduct business in the state of New Mexico. Schwab has an office in New Mexico located at 6501 Americas Parkway NE, Suite #100, Albuquerque, 87110-5307 (the "Albuquerque Branch").

2. Pomeroy is a former Schwab employee who was employed as a Financial Consultant in Schwab's Albuquerque Branch. On October 21, 2014, Pomeroy voluntarily provided four weeks' notice of his resignation as he was contractually obligated to do. Pomeroy is a resident and a citizen of the state of New Mexico. His address is 156 Valle Chaparral, Cedar Crest, New Mexico, 87008.

## II.  JURISDICTION AND VENUE

3. Subject matter jurisdiction exists in this civil action by virtue of diversity of citizenship, 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship. Injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (2) because it is the district in which Pomeroy resides, and it is the district within which a substantial part of the events or omissions giving rise to Schwab's claims occurred.

## III.  THE FACTS

### *Pomeroy's Role at Schwab and Agreement with Schwab*

5. Pomeroy is a former Schwab employee. At the time he left Schwab, Pomeroy was employed as a Financial Consultant.

6. In connection with his employment as a Financial Consultant at Schwab, Pomeroy was assigned clients to service on Schwab's behalf. It bears emphasis that Pomeroy did not develop a "book" of business through cold calls, marketing efforts, or his own connections in the way that stockbrokers at other brokerage firms often do. Rather, Schwab provided Pomeroy with

Page 2- Complaint

pre-existing Schwab clients or qualified leads to service. Schwab is a broker/dealer that offers investment services and products, and has approximately nine million client brokerage accounts nationwide. Some of these clients have asset levels and needs extending beyond basic brokerage services.

7.      Financial Consultants, like Pomeroy, work with Schwab's clients to help them set goals, conduct financial planning, and determine their financial strategies. Financial Consultants can also help clients arrange to receive a personal financial plan, which is a comprehensive analysis of their financial situation. They also partner with other Schwab employees to provide clients with services ranging from estate planning, to fixed income planning, to education and retirement planning.

8.      During his employment at Schwab, Pomeroy was responsible for servicing a group (known as a "practice") of clients that had been developed by Schwab and assigned to him. In this capacity, he serviced hundreds of clients with an approximate and collective $381 million in assets in Schwab's custody as a securities broker/dealer. These clients' accounts generate hundreds of thousands of dollars in revenues every year, and they have generated hundreds of thousands of dollars in profits for Schwab.

9.      To enable Pomeroy to service its clients, Schwab provided him with access to Schwab's extensive client records and information, including clients' transactional histories, account types, account balances, asset allocations, income, liquid and total net worth, tax status, tax information, investment objectives, and other personal financial information. Schwab paid Pomeroy and provided him with an opportunity to develop, cultivate and maintain relationships with its clients.

10. There is no public source available from which Pomeroy (or anyone else) could ascertain the identities and contact information of Schwab's clients, much less the high net worth clients he serviced. The identities of the clients assigned to Pomeroy at Schwab are not generally known to third parties, such as competitor financial services firms. Schwab's customer list would be very valuable to competitors because it identifies high net worth clients who generate significant revenues and who have demonstrated a need and desire for a heightened level of financial service. Schwab's competitors can unfairly benefit from this list because it would enable them to target their financial products, services and marketing efforts to a pre-selected elite group of clients without the need to spend any time, money or resources to identify and develop such clients.

11. As a condition of initial employment at Schwab, all employees who interact with clients are required to sign a confidentiality and non-solicitation agreement. Pomeroy was no exception. Pomeroy executed a confidentiality and non-solicitation agreement when he began employment with Schwab, and from time-to-time, he renewed his commitment by signing subsequent versions of those agreements.

12. A true and correct copy of the agreement most recently executed by Pomeroy (hereafter, the "Agreement") as maintained by Schwab in its files is attached as **Exhibit A** and incorporated herein by reference. The Agreement is supported by consideration. Pomeroy executed the Agreements in exchange for continued employment with Schwab. He also received the opportunity to participate in the FC Incentive Plan, which provides the opportunity for additional compensation based on revenue earned by Schwab.

13. Pomeroy made three key promises: (1) that he would provide four weeks' notice of his resignation from Schwab, during which time he would perform certain duties to assist in an orderly transition of client files, data, and relationships; (2) that except as required to perform his

Page 4- Complaint

duties for Schwab, he would not take or remove from Schwab's premises, or use or disclose, Schwab's customer information, including the identities of its customers or any other client contact information such as telephone numbers or email addresses; and (3) that he would not solicit or induce clients to divert, transfer, or otherwise take away business from Schwab.

### *Pomeroy's Agreement to Provide Notice*

14. When an employee resigns with little or no notice, this sudden disruption can compromise Schwab's ability to service clients, and effectuate and ensure an orderly transition for the client, particularly those with significant and diverse assets. For these reasons, among others, Pomeroy's Agreement contained a notice provision. See **Exhibit A** at ¶ 5.

15. Under the notice provision, Pomeroy promised to provide four weeks' notice of his resignation in writing. See id. These four weeks are known as the "Notice Period." Paragraph 5(b) of the Agreement specifies the types of duties and cooperation Pomeroy is to provide during the Notice Period. These duties include "tak[ing] steps to help transition responsibility for client files, client data, client relationships and/or other job duties." Id. Pomeroy also agreed that during the Notice Period he would: "(i) organize files for transition; (ii) meet with my manager or his/her designee to review files and other data to help ensure that Schwab personnel are aware of and understand file contents and other relevant client or business related data; (iii) meet with my manager or his/her designee to review the status of client accounts and relationships to help ensure that client needs may be seamlessly transitioned to and serviced by other Schwab personnel; . . . and (v) otherwise make myself available to Schwab, as requested by my manager, to provide reasonable assistance to effectuate an orderly transition of files, data and client service responsibility prior to his last day of employment." Id.

Page 5- Complaint

16. Pomeroy's Agreement also underscores the importance of Pomeroy continuing to abide by his duty of loyalty during the Notice Period. Specifically, his Agreement provides that "during the Notice Period, I owe Schwab an unmitigated duty of loyalty," and it provides that Pomeroy may not do anything "during the Notice Period that [he] intend[s] or reasonably expect[s] to further [his] interests or the interests of [his] new employer to the actual or potential detriment of Schwab." Id. at ¶5(c).

17. Pomeroy's agreement also enumerates certain activities he may not engage in during the Notice Period: "During the Notice Period, I agree that I will: (i) not (unless authorized in writing by my manager) affirmatively initiate contact with any clients, whether by telephone, in person, via email or otherwise (except that I may respond to communications initiated by clients for the sole purpose of servicing clients); (ii) not discuss or communicate about my impending departure from Schwab with clients unless authorized in writing to do so by my manager; [and] (iii) not take any client related data, records or information off the premises of any Schwab office or facility…." Id.

### *Pomeroy's Agreement Not to Use or Remove Schwab Customer Information*

18. In his Agreement, Pomeroy acknowledged that as a consequence of his employment with Schwab, he would be given access to Confidential Information, including trade secrets. See **Exhibit A** at ¶1. Pomeroy agreed that Confidential Information includes "the identities of clients as clients of Schwab; names, addresses, phone numbers, email addresses, account numbers or financial or personal information pertaining to Schwab clients…." See id. at ¶2. He also acknowledged and agreed that "Confidential Information does not lose its confidential status merely because I commit it to memory." Id.

Page 6- Complaint

19.     In light of this access to Confidential Information, Pomeroy agreed not to assert any claim to it, or to use or disclose Confidential Information during or after his employment with Schwab. See id. at ¶¶ 1 and 9.  Further, Pomeroy agreed not to remove any Schwab property, including any Confidential Information, from Schwab except as required for them to carry out his duties for the company. See id. at ¶ 6.  He also agreed that, upon termination of his employment with Schwab, he would immediately return all property and Confidential Information to Schwab. Id.

### *Pomeroy's Post-Employment Obligations Not to Solicit Schwab Clients*

20.     Pomeroy agreed that for a period of 18 months following the end of his employment with Schwab, he would not solicit or induce any Schwab clients whom he serviced or about whom he gained Confidential Information, in an attempt to divert, transfer, or otherwise take away business from Schwab. See **Exhibit A** at ¶4.  He also agreed that "solicitation includes initiating contact with Clients for purposes of notifying them of [his] new or subsequent place(s) of employment or for purposes of encouraging or inducing them to transfer their accounts to my new firm." Id.

21.     Pomeroy is bound by terms of the Agreement he executed with Schwab.

### *Pomeroy Violates His Agreement by Taking Confidential Customer Information*

22.     Schwab tracks the instances in which its Financial Consultants access "Client Central," which is Schwab's authoritative source for client data, and the primary tool used to serve clients.  Client Central is a repository for many different customer documents and information. See Declaration of Sean Knappenberger (the "Knappenberger Declaration") at ¶6.  The Knappenberger Declaration is attached as **Exhibit B** and is incorporated herein.

Page 7- Complaint

23.     Schwab makes Client Central available to Financial Consultants in order to assist them in servicing clients.  **Exhibit B** at ¶7.  When a Financial Consultant accesses Client Central, the particular client screens that he or she accesses are recorded.  Id. at ¶¶8-11.

24.     Schwab's records also indicate that Pomeroy came into the Albuquerque Branch very early in the morning on Tuesday, October 21, 2014, the very same morning that he provided Schwab with four weeks' notice of his resignation.  See Exhibit B at ¶5.  Specifically, someone using Pomeroy's credentials disarmed the Albuquerque office alarm at Schwab's office at 6:18 AM.  Id.  When Pomeroy's manager arrived at the office shortly after 7:30 AM that morning, Pomeroy provided notice of his resignation.

25.     Of greater concern, Schwab's records show that someone using Pomeroy's credentials logged into Client Central and accessed 88 client accounts in rapid succession beginning at 6:21 AM and continuing until 7:39 AM, which is approximately when the Albuquerque Branch Manager arrived.  Id. at ¶10.  During this time period, as many as three or four accounts were accessed per minute.  Id.  The accounts were accessed by searches using customer ID or account ID numbers.  Id.  For the vast majority of accounts accessed, only the Client Overview Screen was accessed.  Id.  The Client Overview Screen contains the identities of Schwab clients, their addresses, telephone number, account numbers, asset balances, passwords, recent transactions, information about other accounts held at Schwab, and other high level, highly confidential summary information.  The Client Overview Screens are not accessible to anyone outside of Schwab and contain valuable information to any competitor offering services similar to those offered by Schwab.

26.     As stated above, shortly after the Albuquerque Branch manager arrived, Pomeroy provided written notice of his resignation from Schwab.  A true and correct copy of Pomeroy's

Page 8- Complaint

resignation letter is attached as **Exhibit C** and incorporated herein by reference. Although required by his Agreement to identify his new employer (see **Exhibit A** at ¶5(a)), Pomeroy did not do so.

27. In the days following Pomeroy's notice of resignation, i.e., during his Notice Period, as Schwab was working to transition the clients assigned to Pomeroy, Schwab discovered his unusual Client Central overview screen access described above. On October 30, 2014, Schwab's Albuquerque Branch Manager spoke with Pomeroy regarding Schwab's findings and expressed Schwab's suspicion and concern that Pomeroy had engaged in this activity for the wrongful purpose of removing confidential client information.

28. Pomeroy offered nonsensical explanations for his conduct. For instance, Pomeroy admitted that he had come into the office in the early morning hours on October 21st, and he admitted that he accessed Client Central for the purpose of making a list of client information for use in connection with contacting clients concerning his departure from Schwab, but he said that he had done so in anticipation of his manager asking him to contact the clients. He also said that he had prepared client list to assist his manager in contacting clients. This explanation is not credible for many reasons including because Pomeroy never mentioned the list to his manager when he resigned.

### *Pomeroy Contacts at Least One Schwab Client in Violation of his Agreement*

29. As contemplated by his Agreement, Schwab utilized the Notice Period to begin transitioning clients that were previously assigned to Pomeroy for servicing. When the Branch Manager of Schwab's Albuquerque office contacted one of the clients, Client JB, on October 23, 2014 for the purpose of notifying the client that Pomeroy had submitted notice of his resignation, the client told the Branch Manager that Pomeroy had already called him the day before (i.e.,

Page 9- Complaint

October 22nd) to say that he was leaving Schwab.  (Client JB is identified herein by initials so as to preserve the confidentiality of his identity.)

30.     On October 30, 2013, Schwab's Albuquerque Branch Manager asked Pomeroy why he had contacted Client JB.  Pomeroy denied that he had called client JB and could offer no explanation as to why Client JB said Pomeroy had called him.  Pomeroy could not offer any explanation as to how Client JB was aware of Pomeroy's resignation other than to speculate that the client heard it from someone else.

31.     Upon information and belief, and as Schwab expects to establish upon further investigation and discovery, Pomeroy has breached his Agreement by removing confidential client information he gathered during his early morning Client Central access on October 21, 2014.

32.     Upon information and belief, and as Schwab expects to establish upon further investigation and discovery, Pomeroy has breached his Agreement by contacting and soliciting customers in addition to Client JB and by using Schwab's confidential client information to effectuate such communications.

33.     Pomeroy's conduct threatens to harm Schwab's goodwill with its customers and cause Schwab's customers to be concerned about the ongoing safety and security of their confidential information which they entrusted to Schwab.

## COUNT I
## INJUNCTIVE RELIEF

34.     The averments of Paragraphs 1 through 33 are incorporated by reference herein with the same force and effect as if set forth in full below.

35.     By virtue of the foregoing, Schwab has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Pomeroy.

36. Unless Pomeroy is temporarily and/or preliminarily enjoined pending arbitration on the merits, Schwab will be irreparably harmed by:

(a) Disclosure and misuse of trade secrets, customer lists, and/or other confidential information that is solely the property of Schwab and its clients;

(b) Solicitation of Schwab's clients;

(c) Loss of confidentiality of the information contained in clients' records, loss of confidentiality of clients' financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

(d) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

37. Schwab has no adequate remedy at law.

## COUNT II
## BREACH OF CONTRACT

38. The allegations of Paragraphs 1 through 37 are incorporated herein by reference with the same force and effect as if set forth in full below.

39. By virtue of the foregoing conduct, Pomeroy has breached the terms of his Agreement that he executed with Schwab attached as **Exhibit A**.

40. Upon information and belief, and as Schwab expects to establish upon further investigation and discovery, Pomeroy is continuing, and will continue, to violate his contractual obligations.

41. As a consequence of the foregoing, Schwab has suffered and will continue to suffer irreparable harm and loss.

**COUNT III**
**MISAPPROPRIATION AND MISUSE OF TRADE SECRETS**

42. The allegations of Paragraphs 1 through 41 are incorporated herein by reference with the same force and effect as if set forth in full below.

43. The books, files and records of Schwab, the confidential information contained therein, and especially the data pertaining to Schwab customers, including customers' names and addresses, as well as additional information such as customers' social security numbers, account numbers, financial status, financial statements, investment objectives and preferences, assets and/or securities held by these customers, and other highly confidential personal and financial information concerning Schwab's clients, are trade secrets of Schwab subject to protection under the New Mexico Uniform Trade Secrets Act, N.M. Stat. §57-3A-1 et seq.

44. This information derives independent economic value by not being accessible, through proper means, to competitors such as Pomeroy who can profit from its use or disclosure. The identities of Schwab's clients are not readily available to the public or to Schwab's competitors. The strength, nature and composition of the practices assigned to Schwab's employees are not readily available to the public or to Schwab's competitors. Schwab has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

45. Schwab has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access Schwab computer systems and records, restricting access to its business premises, and having employees, including Pomeroy, sign agreements which expressly prohibit the use, removal and disclosure of such information outside of Schwab.  See, e.g., **Exhibit A**.

46. Schwab and its affiliates take other steps to protect the secrecy of this information. For example, Schwab trains its employees on their obligations to protect client information and, in addition to employing managers to monitor communications, Schwab utilizes a centralized management operation with managers responsible for monitoring outgoing correspondence to protect against the wrongful dissemination of proprietary information.

47. In addition, Schwab's computer network and e-mail systems are designed to flag outgoing emails that contain customer information, and the use of fax machines is restricted and monitored to prevent customer information from being transmitted by fax.

48. Schwab also has adopted the Charles Schwab Corporation "Code of Business Conduct" (the "Code"). The Code has a specific section on "Confidentiality of Client Information," which provides: "Information concerning the identity of clients and their transactions and accounts is confidential. Such information may not be disclosed to persons within the company except as they may need to know it in order to fulfill their responsibilities to the company. You may not disclose such information to anyone or any firm outside the company" except in very limited circumstances that do not apply here. The Code also states: "You have the responsibility to safeguard proprietary information of the company and comply with the company's Confidentiality, Non-solicitation and Assignment Agreement, the terms of which are a condition of your employment." A true and correct copy of the Code is attached hereto as **Exhibit D** and incorporated herein by reference.

49. The foregoing conduct of Pomeroy constitutes an actual and threatened misappropriation and misuse of Schwab's trade secret information in violation of the New Mexico Uniform Trade Secrets Act, N.M. Stat. §57-3A-1 et seq.

50.     Pomeroy has acquired and used Schwab's customer information without Schwab's consent, and despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Pomeroy owed and continues to owe Schwab as a former agent, employee and representative of Schwab.

51.     As a consequence of the foregoing, Schwab has suffered and will continue to suffer irreparable harm and loss.

**COUNT IV**
**BREACH OF DUTY OF LOYALTY/BREACH OF FIDUCIARY DUTY**

52.     The allegations of Paragraphs 1 through 51 are incorporated herein by reference with the same force and effect as if set forth in full below.

53.     Pomeroy had, and continues to have and owe, a common law duty of loyalty and/or a fiduciary duty arising as a result of his relationship as an employee, agent and representative of Schwab.

54.     Pomeroy had a confidential relationship with Schwab.  See, e.g., **Exhibit A**.

55.     By virtue of the foregoing conduct, Pomeroy has breached his duty of loyalty and/or fiduciary duty to Schwab.

56.     Further, upon information and belief, and as Schwab expects to establish upon investigation and discovery, Pomeroy is breaching and will continue to breach his duty of loyalty and/or fiduciary duty to Schwab.

57.     As a consequence of the foregoing, Schwab has suffered and will continue to suffer irreparable harm and loss.

## COUNT V
## UNFAIR COMPETITION

58.     The allegations of Paragraphs 1 through 57 are incorporated herein by reference with the same force and effect as if set forth in full below.

59.     The foregoing conduct of Pomeroy constitutes an unfair method of competition.

60.     As a consequence of the foregoing, Schwab has suffered and will continue to suffer irreparable harm and loss.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the foregoing acts and conduct complained of in Counts I through V, Schwab demands judgment in its favor and against Pomeroy as follows:

(1)     Schwab requests that the Court issue a preliminary injunction against Pomeroy to preserve the status quo pending the outcome of an expedited arbitration hearing to be held pursuant to Rule 13804 of the Financial Industry Regulatory Authority Code of Arbitration Procedure, and respectfully requests that the order/injunction:

(a)     preclude Pomeroy from using, disclosing, or transmitting for any purpose, including the solicitation or conducting of business or initiation of any contact with Schwab clients, the information contained in the records of Schwab, or other information pertaining to Schwab clients, including, but not limited to, the names, addresses, email addresses, telephone numbers, personal data and financial information of the clients (excluding members of Pomeroy's immediate family and any customers who have signed account transfer forms);

(b)     preclude Pomeroy from soliciting any business from, or initiating any further contact or communication with, any customer of Schwab whom Pomeroy serviced at Schwab, and/or any customers or prospective customers whose identities Pomeroy learned as a

Page 15- Complaint

result of his employment with Schwab (the "Customers"), including for the purpose of advising any Customers of his new employment or for the purpose of inviting, encouraging, or requesting the Customer to divert business from Schwab (excluding members of Pomeroy's immediate family and any Customers who have signed account transfer forms);

(c) preclude Pomeroy from destroying, erasing or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer files or other electronic storage media) in Pomeroy's possession or control which were obtained from, or contain information derived from, any Schwab records, which pertain to Schwab's clients, or which relate to any of the events alleged in the Complaint in this action;

(d) compel Pomeroy, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Pomeroy's new employer to return to Schwab's counsel any and all records or information pertaining to Schwab's clients or its business, and/or which were obtained by Pomeroy as a result of his employment with Schwab, whether in original, copied, handwritten or any other form, and purge any such information from their possession, custody, or control, within 24 hours of notice to Pomeroy or his counsel of the terms of the Court's Order; provided, however, that any information in computerized or electronic form (including but not limited to personal computers, laptop computers, tablet devices, iPhones, Android phones, mobile telephones and any other device in, or on, which data can be electronically stored) shall be provided by Pomeroy to his counsel within 24 hours of notice to Pomeroy or his counsel of the terms of the Court's Order, and that Pomeroy's counsel shall preserve the integrity of such devices and immediately make any and all such devices

available for inspection and duplication by Schwab's counsel and/or computer forensic consultants.

   (2) Awarding any such other further and additional relief that the Court deems just and proper.

  Dated: October 31, 2014    Respectfully submitted,

          **MODRALL SPERLING ROEHL HARRIS & SISK, P.A.**

         By: /s/ *Jennifer G. Anderson*
           Jennifer G. Anderson
           Attorneys for Plaintiff Charles Schwab & Co., Inc.
           Bank of America Center
           500 Fourth Street, N.W., Suite 1000
           Post Office Box 2168 (87103-2168)
           Albuquerque, New Mexico 87102
           Tel: (505) 848-1800

          And

          Michael R. Greco (upon and subject to admission pro hac vice)
          Fisher & Phillips LLP
          150 N. Radnor Chester Road
          Suite C300
          Radnor, Pennsylvania 19087
          Tel: (610) 230-2150

## VERIFICATION

I, Mark Stamper, verify that I am the Branch Manager of the Charles Schwab office located in Albuquerque, New Mexico. I supervised Darren Pomeroy at the time he resigned his employment with Schwab. I hereby confirm and verify that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief, except (1) where expressly stated to be based upon information and belief, in which case, I believe them to be true, (2) legal conclusions, for which I expressly defer to Schwab's counsel, and (3) the facts alleged at ¶¶ 22-25, which are verified by the sworn Declaration of Sean Knappenberger, which is attached hereto as **Exhibit B** hereto. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 31, 2014

*[signature]*
Mark Stamper